LIZETTE ANDREWS *v.* LEAH SIMMONS ET AL.

1. MARRIAGE BETWEEN SLAVES. *Act* 1865. *Constitution of* 1869.

 Neither sec. 3, act of November 25, 1865 (Laws, p. 82), nor sec. 22, art. 12, constitution of 1869, which legalized slave-marriages and legitimated the issue thereof, applied unless, at the time the act was approved, or the constitution adopted, the parties were living together and cohabiting as husband and wife.

2. SAME. *Code* 1871, § 1766; *not applicable.*

 Section 1766, code 1871, which validates all marriages "heretofore solemnized in this state not prohibited by art. 3, chap. 23" of said code, related only to former marriages within prohibited degrees. It had no application to unlawful marriages between slaves.

From the circuit court of Wilkinson county.

HON. W. P. CASSEDY, Judge.

Ejectment by appellant against appellees. It is admitted that the title to the land in controversy was in one Barney, who died intestate several years before the bringing of this action. Plaintiff in support of his title offered evidence to show that prior to 1860 Barney, then a slave, was married, according to the custom then existing, to one Mary, a slave, and that they lived together as husband and wife continuously until forcibly separated; that while thus living together as husband and wife, the plaintiff, Lizette, their only child, was born; that the mother died while a slave, and that Barney had not up to the time of her death married again.

Upon the motion of defendants this evidence was excluded by the court. Whereupon verdict and judgment were rendered in favor of defendants, and plaintiff appeals.

Section 1766, code 1871, is a part of the act of April 14, 1871, brought forward as article 3, chap. 23, of that code. The said article defines the degrees of kinship and relationship within which it was made unlawful for persons to marry.

Section 1766 is as follows: "That all marriages heretofore solemnized in this state, not prohibited by the provisions of article 3, chapter 23, of the new revised code, are hereby declared to be legal and valid."

*H. C. Capell* and *D. C. Bramlett*, for appellant.

Immediately upon the elevation of slaves to citizenship it devolved on the legislature to make provision in reference to their marriages, and the descent and distribution of their property. This it did by the act of 1865, and afterwards by the constitution of 1869, which declared the children of all persons who had not been married, but who were then living together as husband and wife, legitimate, whether born before or after the ratification of that constitution. This section was interpreted by our courts to apply only where the parties were living together as husband and wife at the time of the adoption of the constitution. 49 Miss. 358; Ib. 751; 53 Ib. 444.

Section 1766, code 1871, was intended to bring forward and re-enact the legislation of 1865, by providing that all marriages before that solemnized in the state and not prohibited by the provisions of article 3, chapter 23, of the revised code, were legal and valid.

The purpose of this act was to make legitimate the children of parents who had in fact been married prior to the adoption of the constitution, but whose marriage was not recognized by law. Of course it could apply where one of the parties was dead only for the purpose of legitimating their children.

That it was competent for the legislature to regulate the law of descent and declare who should be legal heirs, see *Andrews* v. *Page*, 3 Heisk. 653; *Smith* v. *Perry*, 80 Va. 563; 2 Am. & Eng. Ency. of Law, 137, note.

*T. McKnight*, for appellees.

Section 1766, code 1871, does not relate to marriages so called between slaves. It merely makes valid all marriages before that solemnized in this state and not prohibited. It makes no provision as to the children of unlawful marriages, and hence fails to legitimate such children, without which result plaintiff cannot recover. Marriage is a contract, and pre-supposes persons living competent to contract. *Rundle* v. *Pegram*, 49 Miss. 751; *Dickerson* v. *Brown*, 49 Ib. 357.

The mother of appellant died while a slave, and never became emancipated so as to give her consent to a legal marriage, or even to accept the provisions of said act.

The code of 1871 made changes in the degrees within which marriage was permitted, and hence the necessity for § 1766.

WOODS, J., delivered the opinion of the court.

The only error assigned by counsel for appellant is the action of the trial court in excluding the evidence, offered by plaintiff, showing that she was the daughter of Ike and Mary Barney, who were slaves, united in marriage according to the usages prevailing during the existence of slavery, and that Mary died in a state of slavery, after involuntary separation from her husband, and that Ike did not again re-marry during the lifetime of Mary.

There being no marriages recognized in law among slaves, when this class of our population was enfranchised and elevated to citizenship, the legislature promptly enacted laws applicable to the changed condition, so far as possible validating slave-marriages, and legitimating the fruits of such marriages. Chapter 4, act of 1865, declares "that all freedmen, free negroes and mulattoes, who do now and have heretofore lived and cohabited together as husband and wife shall be taken and held in law as legally married, and the issue shall be taken and held as legitimate for all purposes." This perfectly met the requirements of the embarrassing situation, and was all that could be done to give validity to slave-marriages and to legitimate the issue of such marriages. That the legislature neither undertook to make nor, indeed, could have made valid marriages against the consent of those bound, or against their wish, is too plain for disputation. The act of 1865 undertook to validate marriages between former slaves who had theretofore been and then were living together as husband and wife, and to render legitimate the offspring of such marriages, and this would appear to have exhausted the legislative power.

To further meet the necessities of the changed condition of those who had been in slavery formerly, a constitutional provision, in substantial agreement with the act of 1865, was inserted in the 22d

section of the 12th article of the constitution of 1869, by which it was declared that "all persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken* and held, for all purposes in law, as married, and their children, whether born before or after the ratification of this constitution, shall be legitimate." It will be observed that the constitution went no further than to establish the relationship of marriage between persons who were then living together and cohabiting as husband and wife, and to render legitimate the children of such persons, whether born before or after the establishment, constitutionally, of such marriage relationship.

Neither the act of 1865, nor the 22d section of the 12th article of the constitution of 1869, can, by any ingenuity of construction, be held to validate marriage between persons after the death of one of them, and, necessarily, without the consent of either of them.

It is said, however, by counsel for appellant, that section 1766, code of 1871, validated the slave-marriage of appellant's parents, and legitimated the issue of such marriage. This section declares "that all marriages heretofore solemnized in this state, not prohibited by the provisions of article 3, chapter 23, of the new revised code, are hereby declared to be legal and valid." A glance at said article 3, chapter 23, will show that it is designed to define the degrees within which lawful marriage may not take place, and that it has no reference to slave-marriages—marriages not known to law. The plain purpose of section 1766 was to validate certain marriages theretofore solemnized between parties within the forbidden degrees under former laws.

The apparent hardship of the case of this plaintiff was provided for by section 525, code of 1871, and an adequate and simple method was afforded to appellant's father by which to have had his child born out of lawful wedlock made legitimate. The father did not choose to have the appellant made legitimate, so far as the record in the cause discloses, and the courts cannot, at this late day, do what the father in his lifetime did not wish done.

*Affirmed.*