# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## MARCH TERM, 1898.

---

ROBERT REED ET AL. *v.* RICHARD J. MOSELY ET AL.

MARRIAGE. *Slaves. Laws* 1865, *p.* 82, *sec.* 3; *Const.* 1869, *sec.* 22, *art.* 12.

The act of 1865 (Laws 1865. sec. 3. p. 82), and section 22, article 12, constitution of 1869, providing that all persons theretofore and then living together and cohabiting as man and wife should be taken and held as lawfully married, had the effect of legally marrying such persons, if the relation between them was not unlawful in its inception—as was the case with slave marriages before emancipation—and the parties continued to so live and cohabit after the passage of the act or the adoption of the constitution. *Rundle* v. *Pegram*, 49 Miss., 751, and *Floyd* v. *Calvert*, 53 Miss., 37, distinguished.

FROM the chancery court of Washington county.

HON. A. H. LONGINO, Chancellor.

The complainants in the court below, appellees, vendees of the heirs of one Sidney Mack, filed their bill in this case to cancel a deed executed by Mack, in his lifetime, purporting to convey the lands in controversy. They claimed that the deed was void under code of 1892, § 1983, providing that a conveyance of the homestead by the husband shall not be valid unless signed by the wife of the owner, if he be married and living with his wife. It was averred that the premises constituted

76 Miss.—1

Mack's homestead at the date of the deed; that he was at the time living thereon, with his wife, Esther, and that she did not join in its execution.   The answers of defendants below, appellants, who claimed under the deed, denied that Esther was the wife of Mack.   The ownership of the property thus depended upon the validity of the deed, and this in turn depended upon the validity of the marriage of Sidney Mack, a negro and former slave, with Esther Percy, which marriage was formally contracted in 1884; and the validity thereof was in turn dependent upon whether Sidney Mack, at the time, was the husband of another woman, Amanda Hunter, a negress and former slave.   So the pivotal question in the case was the validity or invalidity of the marriage, in 1860, between Sidney and Amanda, both being then slaves.   The facts in regard to this marriage were these: By the consent of their masters they mutually agreed, in 1860, so far as slaves could contract, to live and cohabit together as husband and wife; publicity was given to the assumption of this relation, according to the custom among slaves, and they continued to live together and cohabit as husband and wife until 1867 at least, and probably until after 1869.   In this state, before the civil war, marriage among slaves was not regulated by law, and they were not legally punishable for adultery or fornication.   According to custom among them, however, male and female slaves, by the consent of their masters, formed alliances which were called marriages, and publicity was given thereto by ceremonies, frequently accompanied by the most formal and elaborate of proceedings, in which the master or overseer of the plantation officiated, as if a public functionary, and the man and the woman so seemingly contracting, were thereafter considered and treated as husband and wife, and lived together and cohabited as such. Just after the war, the result of which was the abolition of slavery and the emancipation of all slaves, the legislature of the state, November 25, 1865, passed an act, the third section of which, referred to in the opinion, so far as relates to the con-

troversy in this suit, was in the following words, viz.: "Section 3. *Be it further enacted*, That all freedmen, free negroes, and mulattoes, who do now and have heretofore lived and cohabited together as husband and wife, shall be taken and held in law as legally married, and the issue shall be taken and held as legitimate for all purposes."

The provision of the constitution of 1869, on the same subject mentioned in the opinion, is in the following words: "All persons who have not been married, but are now living together, cohabiting as husband and wife, shall be taken and held for all purposes in law, as married, and their children, whether born before or after the ratification of this constitution, shall be legitimate; and the legislature may, by law, punish adultery and concubinage." Sec. 22, art. 12.

The decree of the court below being favorable to complainants, canceling the deed, the defendants below appealed to the supreme court.

*R. L. McLaurin*, for appellants.

If Sidney and Amanda were ever, at any time before the alleged marriage between Sidney and Esther, lawfully husband and wife, and were never divorced before said alleged marriage between Sidney and Esther, then Sidney and Esther were never lawfully husband and wife, and appellee must fail. There is proof, though somewhat indefinite, that Sidney and Amanda were living together as husband and wife at the time of the adoption of the constitution of 1869, and, if there be sufficient proof of this fact, then they were lawfully husband and wife, regardless of any question as to the acts of 1865; but, as to the fact that Sidney and Amanda were living together as husband and wife, from a slave marriage in 1860 up to and at the time of the passage of the law of 1865, and after the enactment of said law of 1865, and until 1867, uninterruptedly, there can be no dispute upon the evidence in this case. Sydney and Amanda had a wedding ceremony and supper in 1860, and

lived together as husband and wife—sleeping in the same bed, generally known as man and wife, uninterruptedly, emancipation making no change—continually, at least until 1867, during which time they had born to them four children, the youngest of whom was born in 1867. This was the state of their relation to each other at the time of the passage of the act of 1865, and there is nothing that they could have done that would add emphasis to the fact that they took each other for husband and wife that they were not doing at the time of the passage of said act, and that they did not continue to do after its passage, and until 1867, short of a regular marriage by license. This was not required, for, if it had been, there would have been no necessity for either the act of 1865 or the constitutional provision of 1869. While the act of 1865 was not intended to marry people who did not desire to be husband and wife, yet the fact that parties had been before and were at the time of the passage of this act living and cohabiting together as husband and wife, coupled with the fact that they continued to live so after the passage of the act of 1865, supplied in every particular the assent necessary to legally make them husband and wife, and nothing more was or under the then circumstances should have been required. The act of 1865 was intended to validate slave marriages. This act has been referred to, and commented on with approval, in the case of *Andrews* v. *Simmons*, 68 Miss., 732. The requirement of acts of acceptance, announced in the case of *Floyd* v. *Calvert*, 53 Miss., 37, only applies where there was no impediment to the marriage of the parties before the passage of the law.

*Frank Johnston*, for appellee.

The marriage between Sidney Mack and Amanda Hunter at the time when they were slaves was void. This doctrine was not only held in this state, but was announced and sustained by the courts of the other states wherever the question was presented, as well as by the supreme court of the United States. Among

the leading cases on the subject I cite the following: *Hall* v. *United States*, 92 U. S., 27–30; *Timmons* v. *Lacey*, 30 Tex., 115–136; *Hall* v. *Millin*, 5 Har. & J. (Md.), 196; *Jenkins* v. *Brown*, 6 Hum. (Tenn.), 299; *Jackson* v. *Lervet*, 5 Cow. (N. Y.), 397; *Malinda* v. *Gardner*, 24 Ala., 719–724; *Andrews* v. *Paige*, 3 Heis. (Tenn.), 653. The legal presumption arising from the fact of the celebration of the marriage between Sidney Mack and Easther Percy, by a formal ceremony, is that it was a valid marriage, and that both parties had the capacity to contract marriage. The question has been presented in a variety of phases, in criminal as well as in civil proceedings, and the general doctrine uniformly held, that where the celebration of a marriage is proved, the validity of the marriage, in all its essentials, is presumed as matter of law. *Wilkie* v. *Collins*, 48 Miss., 496; *Blanchard* v. *Lambert*, 43 Iowa, 288; *Canjolle* v. *Ferrie*, 26 Barb. (N. Y.), 177. This presumption is not conclusive, but where the fact of a former marriage is left in doubt, or where the evidence of the fact of a former marriage is not clear and satisfactory, or is conflicting, the presumption of law in favor of the validity of the second marriage should be conclusive.

Neither the statute of 1865 or the constitution of 1869 had the effect of validating slave marriages *ipso facto*. It was always a question whether the parties regarded themselves as married. In view of the fact that both of the parties contracted subsequent marriages, and the presence of Amanda at the marriage between Sidney and Easther, not objecting and setting up no claims of her own, should be conclusive on the question whether Sidney and Amanda regarded themselves bound by the marriage entered into while they were slaves.

WHITFIELD, J., delivered the opinion of the court.

The testimony in this case clearly shows that Sidney Mack and Amanda Hunter were "living together and cohabiting as husband and wife November 22, 1865, at the time of the pas-

sage of the act of that date (acts 1865, p. 82, ch. 4, sec. 3),
and had theretofore so lived from 1860, when a slave marriage
was had between them, according to the then custom of the
country in that regard, and that four children were born to
them in that time, and that they so lived together and cohab-
ited as man and wife certainly till 1867, and probably till
after the adoption of the constitution of 1869, section 22, article
12, of which relates to the point here involved.    Slaves could
not contract marriage, and hence this is a case where a legal
impediment existed to prevent marriage, and the election of
slaves to marry.    The cases of *Rundle* v. *Pegram*, 49 Miss.,
751, and *Floyd* v. *Calvert*, 53 Miss., 37, were both case where,
at the time the living together and cohabiting began, the
parties could have married, no legal impediment existing, but
elected to begin a meretricious union.    In such cases it has been
properly held that there must be "either some formal and ex-
plicit agreement between the parties that they will and do ac-
cept the new organic law [or the statute] as establishing thence-
forward between them a new relationship, . . . or there
must be such open and visible change in the conduct and decla-
rations of the parties that an agreement to accept the new law
might fairly be inferred."    For neither the act of 1865, nor
said section 22 of article 12 of the constitution of 1869, had the
purpose or the effect to marry parties against their will.    But
where a legal impediment did exist to marriage, and the parties
therefore could not elect legally to marry, but did, as a fact,
attempt marriage, according to the then custom of the country,
and did live together and cohabit as husband and wife for years,
up to, at the time of, and after the adoption of, the act of 1865
and the constitution of 1869, "subsequent continued cohabita-
tion" is "of itself a strong circumstance to show an acceptance
of the provisions of the act and the constitution, and a desire to
assume towards each other a new and lawful relationship."
Such continued living and cohabiting together as husband and
wife, after the passage of the act of 1865, or of the constitution,

in the case of slaves who had, before the passage of either, so lived and cohabited together, and were so living and cohabiting together at the adoption of either, is sufficient assent under either, to establish the marriage relation between the parties. That plainly was the manifiest purpose of the act and of the constitution, dealing wisely and competently with a most anomalous situation.   The testimony here satisfies us that these parties were so living and cohabiting together up to 1867, and probably till after the adoption of the constitution of 1869. The case of *Andrews* v. *Simmons*, 68 Miss., 732, decided only that, where one of the parties was dead before the act of 1865 was passed, such party being at the time of her death a slave, neither the said act nor the constitution of 1869 had any application.

*The decree is reversed and the bill is dismissed.*